UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CASSANDRA DIXON                                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:23-CV-2959-KHJ-MTP

EAST MISSISSIPPI CORRECTIONAL FACILITY, et al.          DEFENDANTS

ORDER

Before the Court is Defendant Warden Donald Jackson's (Jackson) [16]

Motion for Summary Judgment and to Enforce Settlement Agreement.[1] The Court

grants the motion in part and denies it in part.

I.      Background

Plaintiff Cassandra Dixon is the mother of Bobbie Jenkins, an inmate

murdered at the East Mississippi Correctional Facility (EMCF). Compl. [1] at 1–2.

This lawsuit arises from that murder. *See id.* at 2. A lawsuit arising from the same

incident came before this Court in 2022. *See* Compl. [1], *Buckley v. Mgmt. &*

*Training Corp.*, No. 3:22-CV-379.[2] The parties now dispute whether the Release

Agreement reached in the earlier lawsuit bars Dixon's current claims. *See* Def.'s

---

[1] Defendant Burl Cain "joins in and adopts the arguments and authorities contained in . . . Jackson's Motion for Summary Judgment and to Enforce Settlement Agreement." Cain's Joinder in Mot. [19] ¶ 2.

[2] The April 2022 lawsuit began in the Western Division of this District but was transferred to this Court on July 6, 2022. Order Granting Mot. to Change Venue [13] at 2, *Buckley v. Mgmt. & Training Corp.*, No. 5:22-CV-26. For the rest of the Order, the Court cites the post-transfer docket: *Buckley v. Mgmt. & Training Corp.*, No. 3:22-CV-379.

Mem. [17]; Pl.'s Mot. to Deny Summ. J. [23]. The Court briefly recounts the 2022 litigation before turning to Dixon's claims.

    A.  April 2022 Lawsuit

On April 10, 2022, Steven Buckley and Yolanda Almons filed suit in this Court against Management and Training Corporation ("Management") and John and Jane Does 1–100. [1] ¶ 1, *Buckley*, No. 3:22-CV-379.[3] They asserted claims under 42 U.S.C. § 1983 for ratification and Eighth and Fourteenth Amendments violations. *Id.* ¶¶ 35–44. They also raised state-law claims for negligence, gross negligence, negligent hiring and supervision, and respondeat superior/vicarious liability. *Id.* ¶¶ 45–52.

Almons sued "individually and as personal representative on behalf of the wrongful death beneficiaries of Bobbie Jenkins." *Id.* ¶ 1 (cleaned up). Jenkins's wrongful death beneficiaries were his four children. [16-4] at 8. Dixon became guardian for two of the minor children—M.P. and M.J.—on September 1, 2022. *See id.* at 1–4, 12–15. That same day, Dixon and Management settled the case and executed a Release Agreement. [16-3]. Dixon signed the agreement as "Cassandra Dixon, Individually and as Guardian of the Wards of [M.P.] and [M.J.]," and a notary public witnessed the signature. *Id.* at 4.

Once the parties had "resolved their disputes forming the basis of th[e] litigation[,]" they submitted—and the Court entered—an Agreed Order of Dismissal

---

[3] Buckley was another inmate at EMCF who was stabbed the same night of Jenkins's murder. *See* [1] ¶¶ 20, 25, *Buckley*, No. 3:22-CV-379. Almons was the mother of one of Jenkins's children. *Id.* ¶ 5.

with Prejudice on September 13, 2022. [14], *Buckley*, No. 3:22-CV-379; *see also* [17] at 3.

B. Current Lawsuit

Dixon filed the current lawsuit on September 26, 2023. [1] at 1. Dixon asserts federal constitutional claims under the Eighth and Fourteenth Amendments and a state-law claim for negligence. *Id.* at 2. She names four Defendants: (1) EMCF; (2) EMCF Jane/John Doe Owners and Operators; (3) EMCF Jane/John Doe Staff Officers, Warden, and Chief of Security; and (4) Mississippi Department of Corrections' Commissioner and Contract Monitor. *Id.* at 1−2.

On February 16, 2024, Jackson moved for summary judgment and to enforce the Release Agreement, arguing Dixon's "claims are duplicative of claims already asserted, resolved, dismissed with prejudice, and otherwise released" in the prior case. [17] at 4. Cain joined in Jackson's motion. [19]. Dixon's response to Jackson and Cain's (collectively "Defendants") Motion for Summary Judgment was due on March 1. She did not file a timely response.

On April 23, Dixon filed a [20] Response to Cain's joinder, arguing that she did not "receive[] a copy of . . . [the] motion for summary judgment from . . . Jackson" and that Cain "did not serve [her] with a copy of . . . Jackson's summary judgment motion he seeks to join." *Id.* ¶¶ 3, 6. So Jackson re-served Dixon copies of the [16] Motion for Summary Judgment and to Enforce Settlement, [17] Memorandum in Support, and [14] Answer. Cert. of Service [21].

Then on April 30, Jackson filed a reply brief contending that "[e]ven though [Dixon] claims she never received Defendant Jackson's Motion . . . , her response . . . is nevertheless untimely." [22] at 1. Jackson argues that "[s]ervice by mail is complete upon mailing." *Id.* (quoting Fed. R. Civ. P. 5(b)(2)). Jackson adds that

> [he] has certified twice now that the Motion, Memorandum, and Answer were all mailed to [Dixon] on the day they were filed (February 16, 2024) to the address that is listed and registered on ECF. [Dixon's] Response maintains that her address is the same as the one [Jackson] sent the papers to. Co-defendant Cain's Joinder was filed the same day and [Dixon] apparently received it. But [Dixon's] Response is dated March 29, 2024, and was not filed with the Court until April 23, 2024. Either date is late, and her Response is untimely.

*Id.* at 1–2 (internal citations omitted). Jackson suggests that the Court should disregard the untimely response. *See id.* at 2.[4] But even if "her [r]esponse is considered," Jackson still asks this Court to "strictly enforce the terms of the Release Agreement," grant summary judgment, dismiss Dixon's claims with prejudice, and "award [Jackson] his reasonable attorney's fees and costs incurred in responding to the instant lawsuit." *Id.* at 2, 4.

On May 15, Dixon filed a [23] Motion to Deny Defendants' Motion for Summary Judgment, arguing that the Release Agreement does not bar her current claims. The Court considers Dixon's [20] and [23] filings together and construes them as a single response in opposition to Defendants' Motion for Summary Judgment. Against that backdrop, the Court turns to Defendants' motion.

---

[4] The Court declines Jackson's suggestion. Instead, the Court takes Dixon's "pro se status into consideration" and considers her untimely response before ruling on Defendants' motion. *Fountain v. Cain*, No. 3:22-CV-550, 2024 WL 1806434, at *1 (S.D. Miss. Apr. 25, 2024).

II.    Standard

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the

suit under the governing law,' while a dispute about that fact is genuine 'if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022)

(quotation omitted). "A movant is 'entitled to a judgment as a matter of law [when]

the nonmoving party has failed to make a sufficient showing on an essential

element of [its] case with respect to which [it] has the burden of proof.'" *Carnegie*

*Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (quotation omitted).

III.    Analysis

According to Defendants, the Release Agreement (1) extinguishes Dixon's

current claims and (2) entitles Jackson to an award of attorney's fees. The Court

agrees with the former but disagrees with the latter.

A.  Release of Liability

"[T]he construction and enforcement of settlement agreements is governed by

the principles of state law applicable to contracts generally." *Sundown Energy, L.P.*

*v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quotation omitted). Under Mississippi

law, "[a] settlement agreement is treated as a contract." *Gates v. City of Biloxi*, No.

1:22-CV-356, 2024 WL 289354, at *4 (S.D. Miss. Jan. 25, 2024) (quotation omitted).

When interpreting a contract, the Court must first "determine if the contract is

ambiguous, 'and if it is not, then it must be enforced as written.'" *Cascio v. Cascio Invs., LLC*, 327 So. 3d 59, 71 (Miss. 2021) (quotation omitted).

The Release Agreement provides, in part, that

> [Dixon], individually and in her capacity as Guardian of the Wards of [M.P.] and [M.J.], hereby releases, acquits, and forever discharges Defendant, East Mississippi Correctional Facility, the Mississippi Department of Corrections, and their past or present insurers and third party administrators, parent companies, subsidiary companies, affiliated companies, directors, officers, members, shareholders, agents, attorneys, accountants, and employees, and their successors, and assigns (collectively, "Releasees") from any and all possible claims, demands, actions, causes of action, damages, costs, expenses, and liabilities whatsoever, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at law or in equity, originating in whole or in part on or before the Effective Date, which [Dixon], individually and in her capacity as Guardian of the Wards of [M.P.] and [M.J.], may now or hereafter have against any Releasees, if any, and irrespective of whether any such claims arise out of negligence, gross negligence, contract, tort, violation of federal or state laws, constitutions, or regulations, or otherwise, or relate in any way to the subject incident, Defendant, or East Mississippi Correctional Facility. [Dixon], individually and in her capacity of the Wards of [M.P.] and [M.J.], agrees not to pursue any claim against any other person or entity that could result in a claim for indemnification against Defendant or any other Releasee.

[16-3] at 2; *see also id.* at 1 (identifying Cassandra Dixon as "Plaintiff" as used throughout the agreement). Dixon does not argue that the Release Agreement's language is ambiguous. And even if she did, "[a] settling party . . . may not assert ambiguity to undo the settlement when the record contains an agreement that is clear on its face." *Gates*, 2024 WL 289354, at *4 (quotation omitted). This Release Agreement's unambiguous language extinguishes Dixon's current claims.

To begin, the contract states: "This Settlement Agreement and Release . . . is entered into . . . by and between Cassandra Dixon ("Plaintiff"), and . . .

Defendant[s]." [16-3] at 1. It specifies that "the Parties have negotiated a settlement . . . of all [c]laims that were or could or should have been asserted by [Dixon] in this [l]awsuit." *Id.* The contract then reiterates three times that Dixon is, "*individually and in her capacity as Guardian of the* [minor children], . . . releas[ing] . . . any and all possible claims" against Defendants that "relate in any way to the subject incident." *Id.* at 2 (emphasis added); *see also id.* at 1 (identifying the subject incident as the "incident at East Mississippi Correctional Facility that occurred on November 26, 2021"). Dixon signed the agreement as "Cassandra Dixon, individually and as Guardian of the Wards of [M.P.] and [M.J.]." *Id.* at 4. Dixon had legal counsel, and her counsel signed the Release Agreement. *Id.* at 5.

In short, Dixon's current claims "unambiguously fall within the broad scope of the Release." *Brewer v. Liberty Mut. Ins. Co.*, No. 2:14-CV-95, 2015 WL 3620468, at *3 (S.D. Miss. June 9, 2015), *aff'd*, 628 F. App'x 279 (5th Cir. 2016). The Court "will not rewrite [the contract] to satisfy the desires of either party." *Gates*, 2024 WL 289354, at *4 (quotation omitted). Because there is no genuine dispute of material fact as to whether the Release Agreement bars Dixon's current claims, the Court grants Defendants' Motion for Summary Judgment.

B. Attorneys' Fees

Jackson argues that paragraph 10 of the Release Agreement allows him to recover his "counsel['s] fees generated as a result of having to move to dismiss [Dixon]'s lawsuit and enforce the settlement." [17] at 7. Paragraph 10 states, in part:

7

> [A]ny action for the breach of this Agreement, or the enforcement thereof, shall be brought only in the United States District Court for the Southern District of Mississippi, Northern Division. The substantially prevailing party in any such action shall be entitled to recover its reasonable attorney's fees and costs incurred from the non-prevailing party.

[16-3] at 3.[5] In Jackson's view, "[b]ecause the Release Agreement is unambiguous, so too is the provision allowing the recovery of attorney's fees to a party seeking to enforce its terms." [17] at 6. He adds that "enforcing the Release Agreement without enforcing the attorneys' fees provision would be contrary to law." *Id.* at 7. The Court disagrees.

"Attorney's fees can only be awarded pursuant to a relevant contractual provision, statutory authority, or where punitive damages are also proper." *Indus. & Mech. Contractors of Memphis, Inc. v. Tim Mote Plumbing, LLC*, 962 So. 2d 632, 638 (Miss. Ct. App. 2007) (quoting *Hearn v. Autumn Woods Off. Park Prop. Owners Ass'n*, 757 So. 2d 155, 164 (Miss. 1999)). "Where a contractual provision concerning the award of attorneys' fees is at issue, th[e] Court will apply [Mississippi's] rule concerning the interpretation of any contract, which is to 'enforce a contract when its terms are clear and unambiguous.'" *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1113 (Miss. 2007) (quotation omitted).

"A close reading of the pertinent contract terms" reveals that paragraph 10 of the Release Agreement does not authorize an award of attorneys' fees here. *Hamilton v. Hopkins*, 834 So. 2d 695, 700 (Miss. 2003). The provision authorizes recovery of attorneys' fees arising from "*any action for* the breach of this [Release]

---

[5] Dixon does not respond to or otherwise oppose this request. *See* [20]; [23].

Agreement, or the enforcement thereof." [16-3] at 3 (emphasis added). "[A] fair reading of this clause reveals that the right to payment of attorney[s'] fees was contingent on" the type of suit filed with the Court. *Hamilton*, 834 So. 2d at 700. In other words, the provision requires a party either to (1) bring "an[] action for the breach of th[e Release] Agreement" or (2) bring an action for "the enforcement" of the Release Agreement. [16-3] at 3. This lawsuit meets neither requirement—Dixon brings a cause of action for federal constitutional claims and state-law negligence claims. [1] at 2.

The Court is "obligated to enforce" the "clear and unambiguous" terms of the Release Agreement. *Hamilton*, 834 So. 2d at 700. And those unambiguous terms do not allow for an award of attorneys' fees here. The Court therefore denies Jackson's request for attorneys' fees.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. The Court GRANTS IN PART and DENIES IN PART Defendants Warden Donald Jackson and Burl Cain's joint [16] Motion for Summary Judgment and to Enforce Settlement Agreement. The Court grants the motion in all respects other than Jackson's request for attorney's fees. Accordingly, the Court DISMISSES with prejudice Plaintiff Cassandra Dixon's claims. The Court will issue a final judgment consistent with this Order.

SO ORDERED, this 19th day of July, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

9